UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL NO. 1:18CR-00006-GNS |
| GARY WOMACK | DEFENDANT |

UNITED STATES' SENTENCING MEMORANDUM
*Electronically filed*

Comes the United States of America, by counsel, and submits the following sentencing memorandum in support of our request for a total sentence of 15 months imprisonment for the defendant, Gary Womack, as a result of the offenses for which he has pleaded guilty.

INTRODUCTION

Womack pleaded guilty to a 3 Count felony Information, by an agreement pursuant to FRCrP, Rule 11(c)(1)(C), to three violations of the Archaeological Resources Protection Act (ARPA), 16 U.S.C. §§ 470ee.  Count 1 charges that on or about March 22, 2015, Womack knowingly received, purchased or transported in interstate commerce between Indiana and Kentucky, archaeological resources valued in excess of $500.  Count 2 charges that on or about and between June 17 and July 12, 2015, Womack knowingly received or exchanged archaeological resources removed from public land with a value in excess of $500. Count 3 charges that on or about June 5, 2016, Womack knowingly received or exchanged archaeological resources removed from public land with a value in excess of $500.  The offense conduct in this case does not reveal

the "boy scout on a trail picking up an arrowhead" which President Jimmy Carter expressed concern about before signing ARPA into law in 1979.  (emphasis added).

CIRCUMSTANCES OF THE OFFENSE

**Predication and Commencement of Investigation**

On September 28, 2012 a Park Ranger at Mammoth Cave National Park received a call from the Kentucky Heritage Council stating that they had received information from a man who wished to report an incident involving possible illegal possession of archaeological resources and human remains from Mammoth Cave.  He reported that he had been invited to the home of Gary Womack who invited the man to his basement to show him his "collection."  Womack showed the man a variety of Indian artifacts he had collected from "Mammoth Cave" among other locations. The man further stated that he had been invited into a "walk-in vault" located in Womack's basement in which he stated "skeletons" were located.  Park Rangers relayed the information to a Park Service Special Agent who followed up with the source and commenced an investigation. This Agent, a resident of California, followed up with the Louisville U.S. Attorney's Office and stated he intended to begin an undercover investigation and attempt to contact Womack when he was "back east" on other duties. The agent also followed up with the Bowling Green Resident Agency of the FBI which agreed to open a joint investigation.

On May 25, 2014, the Park Service Special Agent, acting in an undercover capacity, attended the Elizabethtown prehistoric artifact show, held annually at the Pritchard Center. He believed Womack would be present, he was not. That evening the Agent called Womack and left a voicemail stating he had attended the Elizabethtown show and had met people who stated that he and Womack had similar collecting interests.  On Sunday morning, May 26, Womack returned the call and a meeting was arranged that evening at Womack's home in Woodburn, Kentucky.

2

**Transaction 1 – The G. E. Mound Artifacts**

On May 26, 2014 the Agent met Womack at his residence near Woodburn, Kentucky. The Agent, whose undercover name was Thom Everett from Dinuba, California, explained his interest in collecting Indian stuff to the Womack's and that he frequently travelled back East on business. Womack showed him artifacts from his collection, many of which were removed from private land; including items from nearby Savage Cave, from which Womack acknowledged it was illegal for him to take artifacts. Womack also showed the Agent items which came from the "G.E. (General Electric) Mound," an ARPA case from the 1990's prosecuted in the Southern District of Indiana which involved artifacts removed from a burial mound from the Hopewell culture which flourished in the eastern United States from 200 B.C. until 500 A.D. Artifacts from this case were supposed to have been reburied as part of the settlement. Womack acknowledged that "Art Gerber and others" had "gone to jail" and stated, "these (artifacts) came from the site that got them in prison." The Agent expressed an interest in acquiring "blades" from the G.E. Mound. All undercover contacts in the case were recorded.

On November 23, 2014, the Agent visited Womack a second time. During the visit Womack acknowledged that his favorite artifacts were made from bone, which he excavated from caves near his home. Womack stated, "I don't take them to shows" because that would be illegal. He stated that recently a "Dude had some (bones) for sale for $2,000 (and) only showed them to people he knew." Womack further stated that persons attending shows had to be careful to whom they showed certain artifacts because, "they'd be afraid it would be the government." Womack told the Agent, "I was kind of apprehensive when you showed up."

During the meeting, Womack displayed some artifacts (unfinished blades or "cache" formed from a light colored chert called "Burlington Chert") from the G. E. Mound and stated, "I

3

really don't want to sell them, but I could let you have a couple." After further discussion centered on another individual who had additional G. E. Mound cache blades, Womack stated, "I could probably get them because I know the dude and he probably ain't sold them yet. The government got back most of them. He's been sitting on them for twenty years." After some email and phone call exchanges, Womack told the Agent the man selling the artifacts had "four full frames" of what was referred to as "Art's white blades" and was asking between $2500 to $3000 for all of them. It was agreed that the Agent would purchase one-third of the blades for $1250.

On March 15, 2015, the Agent sent Womack $1250 for the artifacts via PayPal. The 2015 Indian Artifact Show in Boonville, Indiana was held on March 22nd. On March 23, 2015 the Agent received a text from Womack stating, "G.E. Mound blades purchased." On April 4, 2015, Womack confirmed that he had been present at the Boonville Indiana Artifact Show.

### Transaction 2 – The Channel Islands National Park Artifacts

On December 19, 2014 the Agent emailed photos of artifacts to Womack labeled, "Channel Islands N.P. Santa Rosa Isle," "Lake Mead, NV," and "CA Desert south of Barstow BLM" (all lands administered by the Park Service and by the Bureau of Land Management). Less than two hours later, Womack replied that he was interested in "14 of these pieces." On May 11, 2015 the Agent again sent Womack photos of these artifacts. Womack responded, "When you come this way are you going to bring these pieces with you? I'm interested in several of them."

On May 14, the Agent replied, "Sure will if they are of interest." Womack replied, "Maybe do a trade on some of them." Womack also invited the Agent to attend the "Cape Girardeau show on June 28" stating that he would have two tables of items for sale. On June 12, 2015, because a planned visit to Womack had fallen through, the Agent sent him a text stating, "I may just mail you the Channel Islands stuff." On June 17, the Agent sent the box of artifacts, all recovered from

previous ARPA cases, to Womack, who acknowledged their receipt by text.

On July 12, 2015, the Agent met with Womack at his home in Woodburn, KY. The provenance of the 243 stone artifacts as coming from Federal lands was clearly discussed. The Agent also received his 1/3rd share of the G.E. Mound artifacts and an additional number from having traded the Channel Island N.P. and other artifacts for them. The transaction was recorded on both video and audio.

### Transaction 3 – Five Ceramic Vessels and other artifacts

Near the conclusion of the July 12, 2015 meeting with Womack, and subsequent to a detailed discussion of the artifacts just purchased, the Agent stated, "I'll get you more California stuff." Womack replied, "If you run across some decent pots, I'm in the market."

On November 16, 2015 the Agent texted Womack stating, "Sorry for being out of touch – I've been busy. I still owe you pics of some pots to see if any are of interest. I'll try to get that done after Turkey Day." They otherwise discussed meeting at artifact shows in Collinsville, IL and/or Lexington, KY. On May 10, 2016, the Agent sent Womack photos of prehistoric ceramic vessels, with the message, "Long overdue, here are some pics of a few of the southwestern pots I have. I will take pics of others I might be willing to part with and send to you later." The Agent also informed Womack that he was booking a flight to Nashville and stated, "Thinking I'd stop by Sunday June 5th if that worked 4 u". Womack replied, "Yeah, sounds good."

On May 24, 2016, the Agent re-sent the photos of the pots to Womack. Also sent were photos of perishable artifacts, including basket fragments and wooden artifacts. Womack replied, "Possibly interested if not too pricey . . . like most pottery from that area." On May 28, the Agent re-texted six pictures of prehistoric pottery to Womack's cellphone and placed a value with each photo. The text also contained the notation, "Most from N AZ NF's" (Northern Arizona National

5

Forests). "Ladle from NM (Gila nf near Reserve, nm)." The abbreviation means, Gila National Forest near Reserve, New Mexico. On June 1 the Agent texted Womack to see if he had received the texts with photos. Womack replied, "Yes all 6."

On June 5, 2016, the Agent visited the Womack residence for the last time in an undercover capacity. He brought the four pre-historic ceramic vessels and a ceramic ladle depicted in the photos previously sent and four small flaked stone artifacts. Each item was previously recovered from an ARPA investigation and was accompanied by a handwritten note indicating from where they had come. The Agent exchanged these for a number of flaked stone artifacts provided by Womack and two additional G. E. Mound bifaces. A value of $900 was mentioned on the tape of the transaction. Near the conclusion of the undercover tape, Womack asked the Agent for the names for the counties in Arizona and New Mexico from which the public or Indian land was located. These county names are placed on slips of paper and replaced the previous notations so that it could be argued that the items came from private lands.

### Execution of Search Warrant – June 9, 2016

On June 9, 2016 Park Service and FBI Special Agents, along with representatives from the Simpson County Sheriff's Office, Kentucky State Police, Kentucky Department of Fish & Wildlife Resources, and Kentucky Probation Officers participated in execution of a federal search warrant for the Womack residence on Hardison Road in Woodburn, Simpson County, Kentucky. Evidence collected included all artifacts exchanged between the undercover Park Service agent and Womack. Although the "walk-in" with "steel door", as described by the original tipster in the case was located, no human remains were found on the premises.

State agents found at least five marijuana plants in the home. In June of 2017, this resulted in the felony indictment of Gary Womack by a Simpson County grand jury. Gary Womack was

already under diversion from Simpson County Circuit Court for an earlier marijuana grow. The additional offense resulted in his arrest by State Probation officers on the date of the search.

ARGUMENT

This Court should sentence Womack to 15 months of imprisonment pursuant to the Plea Agreement.

Title 18 U.S.C. § 3553(a) **Factors to be considered in imposing a sentence** states, in pertinent part, that, the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. That is, the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The court, in determining the particular sentence to be imposed, shall consider -

● the nature and circumstances of the offense and the history and characteristics of the defendant;

● the kinds of sentences available;

● the kinds of sentence and the sentencing range established for – the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

- any pertinent policy statement; and,

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The **nature and circumstances of the offense** are serious. The detail provided within this sentencing memorandum demonstrates that Gary Womack is not the "Boy Scout picking up arrowheads on a trail" referred to above. In fact, he is a grave robber who talked for hours to the agent about digging into graves and collecting high grade relics buried with the dead. For example, in the November 23, 2014, undercover tape with the Park Service agent, he shows the agent a pipe and a hair pin which he says he removed from a cave burial. He discussed digging into a grave on the Mississippi and finding a "skullcap" which contained beads. He says the skull disintegrated when he picked it up. (TS page 70). Among his many references to the condition of the human remains he has dug, he states that he dug up the headless skeleton of a woman. Later he talks about waving about the femur of a man "who must have been seven or eight feet tall." The bones of an infant "disintegrate(ed)" as he pulled them from their resting place, he says. (TS at 74-75). Indeed, this entire investigation was predicated on the allegation that Womack possessed human remains, a skeleton, taken from a national park. The details of the defendant's underground storage vault were corroborated; his possession of the bones was not.

Womack's personal **history and characteristics** portray a man well aware of the law he chose to violate. Womack's knowledge of the facts in *United States v. Gerber,* 999 F.2d 1112 (7th Cir. 1993), as demonstrated in the undercover transcripts in the case, is impressive. In showing artifacts from that case to the agent, Womack stated, "these came from the site that got them (Gerber and two other defendants) in prison." ( May 26, 2014 TS at 26). At a later meeting, while trying to sell artifacts from the case, Womack explained that "the Government got back most of

them . . . I got out of giving them back because I bought them outside (a) show out of the back of a dude's pickup." Later in the same transcript, Womack refers to artifacts which he says, "I don't take them to shows . . . dude has some for sale for $2000 (and) only showed them to people he knew (because) they would be afraid it would be the government." Womack then tells the agent, "I was kind of apprehensive when you showed up." The agent replied, "You can't be too careful in this day and age." (November 23, 2014 TS at 60-63, 76-78, 230-231).

Womack also told the agent about digging burials in the caves around Simpson County, Kentucky. "If it's a known cave, there's several of them in this area (he mentions Savage Cave and O'Brien's Cave), that are protected by historical societies . . . they'll go in every so often and check . . . you can't go in there no more." Concerning Savage Cave (a National Register Site), Womack states, "I used to wear that cave out in the 80's . . . Murray State turned over Savage Cave to the Kentucky Historical Society . . . they've got motion detectors on that (now)." But, private caves, "they wear them out." Womack mentions that O'Brien's Cave, now protected by Western Kentucky University, was once looted by a man using a "pressure washer pump" who came out of the cave with an "actual pick-up truck full of arrowheads." When Womack next went to dig in the cave, he nearly "fell off" into a 20 foot hole. Digging in caves "is out anymore . . . because you get caught, they're gonna hang your ass . . . I'm talkin prison time now. . . although I met a guy at the show the other day that was (digging caves)." (May 26, 2014 TS at 60-63). By sentencing Womack to 15 months imprisonment this Court will **promote respect for the law** by sentencing a defendant who both knew the law and chose to violate it.

The **sentencing range established as set forth in the guidelines** (by the Presentence Report) is as follows:

   8   Base Offense Level   Theft of Cultural Heritage Resources
           U.S.S.G. § 2B1.5

+2   Value of Resources over $6500  § 2B1.5(b)(1

+2   Resources from National Park System § 2B1.5(b)(2)

+2   Offense committed for pecuniary gain or involved a commercial purpose  § 2B1.5(b)(4)

+2   Offense involving human remains and/or a funerary object

<u>+2</u>   Defendant engaged in a pattern of misconduct involving cultural heritage resources  § 2B1.5(b)(5)

18   Base Offense Level

<u>- 3</u>   Acceptance of Responsibility  § 3E1.1(a)

15   Final Offense Level

The offense level agreed upon by the parties as contained in the plea agreement varies only slightly from these calculations. At the time this case was plea bargained, Mr. Womack did not have the criminal history he has now as the result of conviction for growing marijuana in Simpson County Circuit Court. In addition, the U. S. had only a partial estimate of the Cost of Restoration and Repair.

## CONCLUSION

We urge this Court to accept this plea agreement and sentence the defendant accordingly. A sentence of 15 months imprisonment provides **adequate deterrence to the criminal conduct** of this defendant and others who would engage in criminal conduct involving cultural property and the looting of the graves of Native Americans of booty to sell at Indian artifact shows and to enhance their personal collections. Likewise, it **protects the public from further crimes of this defendant.**

Respectfully submitted,

RUSSELL M. COLEMAN
UNITED STATES ATTORNEY

<u>s/Randy Ream</u>
Randy Ream
Assistant United States Attorney
717 West Broadway
Louisville, KY  40202
(502)582-5911

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that on May 15, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will notify counsel of record.

<u>s/Randy Ream</u>
Randy Ream
Assistant United States Attorney

11